United States District Court
Southern District of Texas
**ENTERED**
July 20, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MICHAEL FAULKNER, § § | |
| Plaintiff, § § | |
| vs. § | CIVIL ACTION NO. H-21-2562 |
| § | |
| DETENTION OFFICER FULBRIGHT, *et al.*, § § § | |
| Defendants. § | |

**MEMORANDUM OPINION AND ORDER**

Michael Faulkner, representing himself and proceeding without prepaying the filing fees, filed a civil rights complaint under 42 U.S.C. § 1983 against three detention officers of the Montgomery County Jail, alleging that they used excessive force against him on two separate occasions. (Docket Entry No. 1). Officers Holloway and Baines responded to the complaint with a motion for summary judgment, attaching eight exhibits in support of their motion.[1] (Docket Entry No. 20). Faulkner responded by filing his own motion for summary judgment and a response to the defendants' motion, and they filed a response to Faulkner's motion for summary judgment. (Docket Entry Nos. 27, 28, 29). Having reviewed the pleadings, the motions, the exhibits, and the record, the court grants Officers Holloway and Baines's motion for summary judgment, denies Faulkner's motion for summary judgment, and dismisses this action with prejudice. The reasons are explained below.

---

[1] The court ordered service of process on all three defendants at the Montgomery County Sheriff's Office. (Docket Entry No. 9). The Sheriff's Office initially accepted service on behalf of the third defendant, Officer Fulbright. (Docket Entry No. 10). However, the Sheriff's Office then filed a notice stating that Officer Fulbright was on active military duty when the summons was received and that he remained on active duty as of the date the answer was filed. (Docket Entry No. 14). Officer Fulbright has not responded to the complaint.

I.      Background

Faulkner alleges claims arising from two separate incidents in the Montgomery County Jail. The first occurred on May 24, 2021, when Officers Fulbright and Holloway were transferring Faulkner, a pretrial detainee, to the administrative segregation area of the jail after he had refused multiple commands to stop walking on the dayroom tables. (Docket Entry Nos. 1, p. 5; 20-1, p. 3). Faulkner asked for his property upon arriving at his new cell, but Officer Holloway refused his request. (Docket Entry No. 1, p. 5). Faulkner asked Officer Holloway to call a supervisor, and Officer Holloway denied that request. (*Id.*). Faulkner then covered the window in his cell door with a piece of paper. (Docket Entry Nos. 1, p. 5; 20-1, p. 3). He refused an order to uncover the window.

When Faulkner refused to uncover the window, Officer Fulbright opened the food port to check on him. (Docket Entry Nos. 1, p. 5; 13, p. 2; 20-1, p. 3). Faulkner then thrust his arm through the food port and into the hallway. (*Id.*). Both Officers Fulbright and Holloway repeatedly ordered Faulkner to put his arm back inside his cell so that the food port could be closed and the officers could continue with their work. (Docket Entry No. 13, pp. 2-3). Officer Fulbright "bargained" with Faulkner to try to gain his compliance, telling him that he would receive his property as soon as he put his arm back inside the cell. (Docket Entry No. 20-1, p. 3). Faulkner refused these orders. (*Id.*).

The parties disagree as to what happened next. Faulkner alleges that Officer Fulbright grabbed his arm and twisted it to push it back through the food port, causing Faulkner excessive pain. (Docket Entry No. 1, p. 5). Faulkner alleges that there was no need for this level of force because he was not causing any trouble. (*Id.*). He also alleges that Officer Holloway watched Officer Fulbright inflict this force and did nothing. (*Id.*).

Officer Holloway states that he saw Officer Fulbright use an approved compression wristlock technique to try to force Faulkner's arm back through the food port. (Docket Entry No. 20-1, p. 3). Faulkner refused medical attention after this occurred. Faulkner's jail medical records show that he did not report or seek treatment for any injury from this incident. (Docket Entry Nos. 20-1, p. 3; 20-2).

The second incident, which occurred in late July 2021, involves no disputed facts because it was captured on the jail's camera system. The videos show that Faulkner was creating a disturbance in his cell by yelling, banging on the cell door with his food tray, and throwing his food tray at the cell door. (Docket Entry No. 20-6, 0:01-1:47, 2:09-2:39). He then covered the lens of the camera in his cell with paper. (*Id.* at 3:27-3:30). Based on this behavior, jail officials decided to move Faulkner to a "violent cell." (Docket Entry Nos. 1, p. 4; 20-1, p. 7).

Officer Baines, with other officers, released Faulkner from his cell for the move. (Docket Entry No. 20-4, 1:36). Officer Baines grasped Faulkner's left arm, and another officer grasped his right arm, so he could be handcuffed. Faulkner resisted, first by tensing his arms, then pulling and twisting away from the officers as they tried to apply the handcuffs. (*Id.* at 1:39-2:06). The officers in response pushed him against the wall and were able to secure the handcuffs. (Docket Entry Nos. 20-4, 1:39-2:06; 20-5, 0:10-0:22).

As the officers started walking Faulkner down the hall to the "violent cell," Faulkner again tried to pull away and made noises as if gathering saliva to spit on the officers. (Docket Entry Nos. 20-4, 1:39-2:06; 20-5, 0:22-0:27). Officer Baines and another officer took Faulkner to the ground and called for a restraint chair and a spit hood. (Docket Entry Nos. 20-4, 2:10-2:37; 20-5, 0:27-0:54). Faulkner resisted placement in the restraint chair and verbally threatened the officers. (Docket Entry Nos. 20-4, 3:00-4:58; 20-5, 1:12-3:11). After a struggle, Faulkner was secured in

3

the restraint chair. A nurse came and checked the straps on the chair for proper tension and placement. (Docket Entry Nos. 20-4, 5:26-5:47; 20-5, 3:36-3:58). Faulkner refused medical attention at that time. He did not report any injury to jail medical staff or request medical treatment for any injuries from this incident. (Docket Entry Nos. 20-1, p. 3; 20-2).

In this lawsuit, Faulkner alleges that when Officer Baines pulled his arm up and back to handcuff him, it caused the handcuffs to cut into his arm and wrist and resulted in injuries to his arms. (Docket Entry No. 1, p. 4). Faulkner alleges that when he complained about the pain, the officers slammed him to the ground and later pulled his head back by yanking his dreadlocks. (*Id.*). Faulkner alleges that he suffered a head injury as a result of this action. (*Id.*).

Faulkner seeks monetary damages for the injuries he suffered in both incidents and an investigation into all three of the officers. (Docket Entry No. 1, pp. 4-5). He also seeks to have the charges in his underlying criminal case dismissed. (*Id.*).

## II. Analysis

### A. The Legal Standards

Faulkner sues under 42 U.S.C. § 1983. "Section 1983 does not create any substantive rights, but instead was designed to provide a remedy for violations of statutory and constitutional rights." *Lafleur v. Texas Dep't of Health*, 126 F.3d 758, 759 (5th Cir. 1997) (per curiam); *see also Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To state a valid claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *See West v. Atkins,* 487 U.S. 42, 48 (1988); *Gomez v Galman*, 18 F.4th 769, 775 (5th Cir. 2021) (per curiam).

Officers Holloway and Baines have filed a motion for summary judgment. "Summary judgment is appropriate only if 'the movant shows that there is no genuine [dispute] as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton,* 572 U.S. 650, 656-57 (2014) (quoting FED. R. CIV. P. 56(a)). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine [dispute] of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.,* 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-25 (1986)). "A fact is material if its resolution could affect the outcome of the action." *Dyer v. Houston,* 964 F.3d 374, 379 (5th Cir. 2020) (quoting *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.,* 627 F.3d 134, 134 (5th Cir. 2010)). "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (cleaned up).

The court considering a motion for summary judgment must view all evidence and draw all inferences "in the light most favorable to the [nonmoving] party." *Tolan*, 572 U.S. at 657 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)); *see also Dyer*, 964 F.3d at 380. However, if record evidence clearly contradicts the plaintiff's version of events, the court "should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Waddleton v. Rodriguez*, 750 F. App'x 248, 253-54 (5th Cir. 2018) (per curiam) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). This is particularly true when there is video evidence. When video evidence exists, the court will "view[] the facts in the light depicted by the videotape." *Salazar v. Molina*, 37 F.4th 278, 280 (5th Cir. 2022) (quoting *Scott*, 550 U.S. at 381); *see also Betts v. Brennan*, 22 F.4th 577, 582 (5th Cir. 2022) ("[W]e assign greater weight, even at the summary judgment stage, to the video recording taken at the scene."); *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) ("A court of appeals need not rely on the plaintiff's description

5

of the facts where the record discredits that description but should instead consider the facts in the light depicted by the videotape."). The "court will not adopt facts that are clearly contradicted by the video." *Waddleton*, 750 F. App'x at 254 (citing *Scott*, 550 U.S. at 378). Further, the court will not consider the nonmoving party's conclusory allegations and unsubstantiated assertions as evidence. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

Because Faulkner is representing himself, the court construes his filings liberally, subjecting them to "less stringent standards than formal pleadings drafted by lawyers[.]" *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). But even under this lenient standard, self-represented litigants must still "abide by the rules that govern the federal courts." *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) (quoting *Frazier v. Wells Fargo Bank, N.A.*, 541 F. App'x 419, 421 (5th Cir. 2013)). "*Pro se* litigants must properly plead sufficient facts that, when liberally construed, state a plausible claim to relief, serve defendants, obey discovery orders, present summary judgment evidence, file a notice of appeal, and brief arguments on appeal." *Id.* (footnotes omitted).

B.  **The Claims Against Officers Holloway and Fulbright**

Faulkner alleges that Officer Holloway should be held liable under § 1983 for failing to step in when Officer Fulbright used excessive force against him in May 2021. Pretrial detainees like Faulkner have the right under the Fourteenth Amendment to be free from the use of excessive force. *See Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015). An "officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983" as a bystander. *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). The plaintiff responding to a summary judgment motion must point to record evidence that could support an inference that the bystander officer: "(1) knows that a fellow officer

6

is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (quoting *Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 204 (4th Cir. 2002)). The plaintiff must also point to record evidence supporting the inference that the bystander "acquiesce[d] in" the alleged constitutional violation. *Id.* (quoting *Hale*, 45 F.3d at 919).

The dispute in this case centers on the first element. Faulkner alleges that Officer Fulbright used excessive force when forcing Faulkner to take his arm out of the food port. "Force against a pretrial detainee is 'excessive' and a violation of the Fourteenth Amendment when the force was objectively unreasonable." *Fairchild v. Coryell Cnty., Tex.*, No. 20-50237, 2022 WL 2733704, at *2 (5th Cir. July 14, 2022) (citing *Kingsley*, 576 U.S. at 396-97). Objective reasonableness "turns on the 'facts and circumstances of each particular case.'" *Kingsley,* 576 U.S. at 397 (quoting *Graham v. Connor*, 490 U.S. 386 (1989)). A court must consider objective reasonableness from the perspective of a reasonable officer on the scene. *Id.* Factors to consider about the reasonableness of the use of force include "the relationship between the need for force and amount of force used; the extent of the plaintiff's injury; any effort made to temper or limit the amount of force; the severity of the security problem at issue; the threat perceived by the officer; and whether the plaintiff was actively resisting." *Id.* The court must also consider the legitimate governmental interests in managing the facility and the policies and practices that, in the jail officials' judgment, are necessary to preserve internal order and discipline and to maintain institutional security. *Id.* (citing *Bell v. Wolfish*, 411 U.S. 520, 540, 547 (1979)).

In support of his motion for summary judgment, Officer Holloway offers the sworn testimony of Lieutenant Jeremiah Richards, who explains that Faulkner's actions on May 24, 2021, posed a security risk to the jail for several reasons. (Docket Entry No. 20-3). By covering his cell

window, Faulkner prevented the officers from viewing him and ensuring his compliance with jail rules and his own well-being and safety. (*Id.* at 1). By refusing to comply with the officers' commands to put his arm back in his cell, Faulkner prevented Officers Fulbright and Holloway from returning to their duties and completing their rounds. (*Id.* at 2). And by having his arm outside the cell, Faulkner posed a security risk to other inmates and officers. (*Id.* at 2-3).

Officers Fulbright and Holloway tried to avoid using force by ordering Faulkner to put his arm back inside his cell and by offering to obtain his property for him in exchange for his cooperation. Only when Faulkner repeatedly refused to cooperate did Officer Fulbright turn to the use of force. The force used—a compression wristlock—was minimal. (Docket Entry No. 20-8, pp. 2-4). There is no showing that a lesser degree of force would have sufficed to gain Faulkner's compliance. And while Faulkner alleges that the wristlock injured his arm, jail medical records show that he did not request medical care at any time and did not mention this incident during subsequent visits to the jail medical clinic. Nothing in the record demonstrates that Officer Fulbright's use of a minimal amount of force to gain Faulkner's compliance was objectively unreasonable in light of all of the circumstances, and there is no basis upon which to find that Officer Fulbright used excessive force in this incident.

In his response to Officer Holloway's motion for summary judgment, Faulkner asserts that Officer Holloway is not entitled to summary judgment because there is no video available of the May 24 incident. (Docket Entry No. 27, p. 1). Faulkner also disputes whether he posed any security threat by having his food port open because there are times when inmates are permitted to leave their food ports open. (*Id.*). Faulkner contends that there is "no legitimate non-punitive penological interest" in having him follow the officers' commands because he "wouldn't [have] been able to get [his] property if [he] wouldn't never took hostage the food port." (*Id.* at 2-3).

8

Finally, Faulkner contends that the officers are lying about the amount of force used because he was "gripping the bottom of the food port" and "if I'm gripping the food port you can't do no type of wrist lock." (*Id.* at 2).

Having admitted that he deliberately refused to follow the officers' commands, and having admitted that he was gripping the food port to avoid doing so, Faulkner cannot show that Officer Fulbright took objectively unreasonable steps in using a compression wristlock. Contrary to Faulkner's allegations, "[o]fficers may consider a [person]'s refusal to comply with instructions in assessing whether physical force is needed to effectuate the [person]'s compliance." *Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 729 (5th Cir. 2018) (quoting *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009)). The evidence shows that Faulkner posed a security threat, and the officers tried to eliminate that threat without force by asking for his cooperation, then ordering his compliance. When Faulkner refused, Officer Fulbright used a compression wristlock technique, which is a standard minimal compliance technique. (Docket Entry No. 20-8). No medical records support Faulkner's claim that the wristlock caused injury. Faulkner's unsupported allegations to the contrary are insufficient to preclude summary judgment. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) ("We resolve factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." (quoting *Little*, 37 F.3d at 1075).

The record evidence does not give rise to factual disputes material to determining whether Officer Fulbright's use of force was objectively reasonable. The derivative bystander claim against Officer Holloway fails for the same reason. Both Officers Fulbright and Holloway are entitled to summary judgment.

### C. A Second Basis for Dismissing the Claim Against Officer Fulbright

The U.S. Marshals served Faulkner's complaint on Officer Fulbright through the Montgomery County Sheriff's Office. (Docket Entry No. 10). Shortly after that, the Montgomery County Attorney's Office notified the court that Officer Fulbright was on active duty military service when the complaint was served. He had not returned from service as of the date the other defendants answered. (Docket Entry No. 14). Officer Fulbright has not appeared, and it does not appear that he has actual notice of the action. But court may not enter default or a default judgment against a nonresponding defendant who is on active military duty. *See* 50 U.S.C. § 3931.

While Officer Fulbright did not respond to Faulkner's complaint, Officer Holloway's response raises a defense that applies equally to Officer Fulbright. The Fifth Circuit has held that when one defending party establishes that the plaintiff has no cause of action, the defense can be applied to the benefit of other, similarly situated defendants. *See Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) (quoting *United States v. Peerless Ins. Co.*, 374 F.2d 942, 945 (4th Cir. 1967)). Because Officer Holloway established in his derivative bystander claim that Officer Fulbright did not use excessive force, Faulkner's direct claim against Officer Fulbright based on the same allegations of excessive force fails as well.

### D. Claim Against Officer Baines

Faulkner alleges that Officer Baines used excessive force when he forced Faulkner's arm behind his back and took him to the ground during Faulkner's transfer to the "violent cell." Officer Baines moves for summary judgment on the basis of qualified immunity.

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson v.*

*Callahan,* 555 U.S. 223, 231 (2009)). In determining whether a right is clearly established, the court asks whether the existence of the right is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards,* 566 U.S. 658, 664 (2012) (cleaned up). In short, the court "must ask whether the law so clearly and unambiguously prohibited his conduct that 'every reasonable official would understand that what he is doing violates [the law].'" *Morgan v. Swanson,* 659 F.3d 359, 371 (5th Cir. 2011) (en banc) (quoting *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011)). Under these rules, "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix*, 577 U.S. at 12 (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)).

When a government official moves for summary judgment on the basis of qualified immunity, "the burden . . . shifts to the plaintiff, who must rebut the defense by establishing a genuine fact [dispute] as to whether the official's allegedly wrongful conduct violated clearly established law." *Dyer*, 964 F.3d at 380 (alteration in original) (quoting *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux,* 402 F.3d at 540 (quoting *Little,* 37 F.3d at 1075). "[C]onclusory allegations are not competent summary judgment evidence, and such allegations are insufficient . . . to defeat a motion for summary judgment." *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996) (per curiam) (citing *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992)). Instead, the nonmoving party must identify specific evidence in the record and explain how that evidence supports that party's claim. *See Willis v. Cleo Corp.,* 749 F.3d 314, 317 (5th Cir. 2014).

The video evidence demonstrates that Officer Baines is entitled to qualified immunity because it was objectively reasonable for him to believe that the force he used was not excessive.

The videos show that Faulkner resisted as Officer Baines tried to apply handcuffs. In response, Officer Baines lifted Faulkner's arm to gain his compliance and cooperation. Once Faulkner was handcuffed, he continued to resist as the officers attempted to walk him down the hall. Again in response, the officers used additional force to take Faulkner to the ground and, as he continued to resist, to secure him in the restraint chair. Faulkner's resistance, as well as his apparent attempts to gather saliva as if to spit on the officers, supported the use of additional force. The videos show that the officers used force that was proportionate to the amount and nature of Faulkner's resistance when it was used and that the officers used only the degree of force necessary to restrain Faulkner while protecting the safety of the officers and the security of the jail. In short, the video evidence does not support Faulkner's claim that Officer Baines or other officers used excessive force. *See Carroll v. Ellington*, 800 F.3d 154, 176 (5th Cir. 2015) (finding no excessive force when the officers "responded with measured and ascending actions that corresponded to [the inmate's] escalating physical resistance") (cleaned up).

Faulkner has not pointed to any evidence sufficient to raise a genuine factual dispute material to determining whether the officers' use of force was excessive. He admits that once he was in handcuffs, he "yanked away" from the officers. (Docket Entry No. 28, p. 10). The officers responded by taking Faulkner to the ground in a measured manner that he does not allege caused him any injury or pain. The video evidence does not support Faulkner's allegation that either Officer Baines or any other officer pulled his head up by his hair. The video shows that the officers used the force necessary to maintain control of Faulkner, but no more.

"Not every push or shove" is excessive force. *See Graham*, 490 U.S. at 396. The record does not show that the force used was excessive under the circumstances. Officer Baines is entitled to summary judgment in his favor on the claim against him.

### III.     Disposition of Pending Motions

Faulkner has filed a motion to compel full disclosure of all videos, asking the court to order the defendants to produce video footage from May 24, 2021, July 20, 2021, December 28, 2021, January 12, 2022, March 8, 2022, and March 9, 2022. (Docket Entry No. 24). The defendants have responded that the video footage from May 24, 2021, was disposed of according to established retention schedules before Faulkner's complaint was filed. (Docket Entry No. 30). The defendants have produced the video footage from July 20, 2021. (*Id.*). The video footage from the remaining dates is irrelevant to Faulkner's claims. The Motion to Compel Full Disclosure of All Videos, (Docket Entry No. 24), is **denied**.

Faulkner has also filed a "Motion for Sanctions," asking the court to sanction the defendants for not retaining the video footage of the May 24, 2021, incident. (Docket Entry No. 25). The defendants have responded that the video footage from that incident was disposed of according to established retention schedules before Faulkner's complaint was filed. (Docket Entry No. 30). In addition, the defendants are individual officers who did not have custody or control over the video footage. (*Id.*). Faulkner fails to show that sanctions are warranted. This motion, (Docket Entry No. 25), is **denied**.

Faulkner has filed a "Motion to Supplement Joinder," seeking to add claims against the other officers shown in the video footage from the July 20, 2021, incident. (Docket Entry No. 26). He also seeks to add other officers as defendants based on events that occurred on other dates. (*Id.*). Based on this court's view of the video footage, adding the other officers from the July 20, 2021, incident would be moot as none of the officers used excessive force against Faulkner. And the court has already denied Faulkner's request to add his claims against other officers from other

dates. (Docket Entry No. 17). His "Motion to Supplement Joinder," (Docket Entry No. 26), is **denied**.

Faulkner has filed a "motion to request indigency." (Docket Entry No. 34). The court has already granted Faulkner leave to proceed without prepaying the filing fees. (Docket Entry No. 5). The "motion to request indigency," (Docket Entry No. 34), is **denied as moot**.

Finally, Faulkner has filed a "Motion to Request an Expert Witness," seeking funds to hire an expert to "prove and refute any use of force claims." (Docket Entry No. 35). There is no need for expert testimony to resolve the issues before the court. The "motion to request an expert witness," (Docket Entry No. 35), is **denied as moot**.

### IV.  Conclusion and Order

The motion for summary judgment filed by Officers Holloway and Baines, (Docket Entry No. 20), is **granted**. The motion for summary judgment filed by Michael Faulkner, (Docket Entry No. 27), is **denied**. This action is **dismissed with prejudice** as to all defendants. Final judgment will be separately entered. All pending motions are **denied,** for the reasons explained above.

SIGNED on July 19, 2022, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge